**CASE NO. 26-60316**
**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

---

**GORE, KILPATRICK & DAMBRINO, P.L.LC.**
**A MISSISSIPPI PROFESSIONAL LIMITED LIABILITY CORPORATION** **PLAINTIFF-APPELLANT**

**V.**

**SPINNAKER INSURANCE COMPANY, AN ILLINOIS COMPANY;**
**COWBELL CYBER, INCORPORATED., A DELAWARE CORPORATION;**
**COWBELL INSURANCE AGENCY L.L.C.,**
**A CALIFORNIA CORPORATION;** **DEFENDANTS-APPELLEES**

---

**PROPOSED SUFFICIENT BRIEF OF PLAINTIFF-APPELLANT GORE, KILPATRICK & DAMBRINO, PLLC,**
**FROM THE FINAL JUDGMENT IN THE UNITED STATES DISTRICT COURT,**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI , GREENVILLE DIVISION OF MISSISSIPPI, CIVIL ACTION NO. 4:25-CV-107-DMB-DAS**
**THE HONORABLE DEBRA M. BROWN PRESIDING.**

---

**A CIVIL PROCEEDING**

---

Respectfully Submitted

CHAPMAN LEWIS & SWAN PLLC

Dana J. Swan MSB#8088
501 First Street
Clarksdale, MS
Telephone: 662-627-4105
Facsimile: 662-627-4171

# I. CERTIFICATE OF INTERESTED PERSONS
# CASE NO. 26-60316

(1) No. 26-60316 Gore, Kilpatrick & Dambrino, LLC v. Spinnaker Insurance Company, et al.;
USDC No. 4:25-cv-00107, Northern District of Mississippi, Greenville Division

(2) The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

Dana J. Swan
Chapman, Lewis & Swan
P. O. Box 428
Clarksdale, MS 38614-0428
(662) 627-4105)
Attorney for Plaintiff-Appellant
Gore, Kilpatrick & Dambrino, P.L.L.C.

Gabriel E. Darwick PHV
White and Williams L.L.P.
163 Madison Avenue
Morristown, NJ 07960
(201) 368-7228
Attorney for Defendant-Appellee Spinnaker Insurance Company
Attorney for Defendant-Appellee Cowbell Cyber, Inc.
Attorney for Defendant-Appellee Cowbell Insurance Agency L.L.C.

Nicholas D. Garrard
Wilkins Patterson
4735 Old Canton Rd.
Ste 108
Jackson, MS 39211
(601) 366-4343
Attorney for Defendant-Appellee Spinnaker Insurance Company
Attorney for Defendant-Appellee Cowbell Cyber, Inc.
Attorney for Defendant-Appellee Cowbell Insurance Agency L.L.C.

Robert R. Stephenson

Wilkins Patterson
4735 Old Canton Rd.
Ste 108
Jackson, MS 39211
(601) 366-4343
Attorney for Defendant-Appellee Spinnaker Insurance Company
Attorney for Defendant-Appellee Cowbell Cyber, Inc.
Attorney for Defendant-Appellee Cowbell Insurance Agency L.L.C.

Respectfully Submitted,

By: s/ Dana J. Swan
Dana J. Swan MSB 8088
Chapman, Lewis & Swan
P. O. Box 428
Clarksdale, MS 38614-0428
(662) 627-4105)
Attorney for Plaintiff-Appellant
Gore, Kilpatrick & Dambrino, LLC
July 20th , 2026

## II. STATEMENT REGARDING ORAL ARGUMENT

The facts and legal issues forming the basis of this lawsuit is factually intensive. The Plaintiff-Appellant respectfully suggests that this Honorable Court would benefit from hearing counsel explaining details on law and fact which may shed further light on why the trial court was in error in granting the motion to dismiss. Plaintiff-Appellant seeks a reversal of the trial court based upon the application of the facts in this case to the law and legal errors committed by the trial court, and an understanding of the facts in this matter that oral argument would be of benefit to this Honorable Court.

## III. TABLE OF CONTENTS

I. CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

II. STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . iii

III. TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

1V. TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

V. JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

VI. STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

VII. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

VIII. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1X. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A: The Trial Court Was In Error In Finding That The Spinnaker Policy Was Unambiguous, Did Not Qualify As A Social Engineering Incident And Finding That The Breach Of Contract Claim Failed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B: The Trial Court Was In Error In Dismissing Gore’s Breach Of Contract Cause Of Action By Holding There Was No Privity Of Contract Between Gore and Cowbell I Nor Cowbell II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C: the Trial Court Was in Error in Dismissing Gore's Causes of Action for Bad Faith, Gross Negligence, and Post-claims Underwriting Fail By Holding That The Underlying Breach of Contract Cause of Action Fails And Gore Has Not Sufficiently Pled Any Allegations Which Would Support Such Claims And As To Cowbell I and Cowbell II, Because They Are Not in Privity of Contract with Gore, and Holding Gore's Bad Faith Cause of Action Against Them Must Fail . . . . . . 19

D: The Trial Court Was In Error In Dismissing Gore’s Fraud Cause of Action By Holding That Gore Has Not Pled its Fraud Cause of Action with Particularity . . . . . . . 20

E: The Trial Court Was In Error In Dismissing Gore's Request for Bad Faith, Gross Negligence and Punitive Damages by Holding That the Underlying Causes of Action on Which it Is Predicated Fail to State a Claim. . . . . . . . . . . . . . . . . . . . . . . . 22

X. CONCLUSION AND PRAYER F OR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XI. CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XII. CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## IV. TABLE OF AUTHORITIES

Cases:

*84 Lumber Co. v Cont'l Cas. Co.*,
914 F.3d 329, 333 (5th Cir. 2019) . . . . . . 10

*Andrew Jackson Life Ins. Co. v. Williams*,
566 So. 2d 1172, 1193 (Miss. 1990) . . . . . . 20

*Bankers Life & Cas. Co. v. Crenshaw*,
483 So.2d, 254, 276 . . . . . . 12, 19, 22

*Bell Atlantic Corp. v. Twombly*,
550 US 544, 555-558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) . . . . . . 9,23

*Blackledge v. Omega Ins. Co.*,
740 So. 2d 295, 298 (Miss. 1999) . . . . . . 16

*Caldwell v. Alfa Ins. Co.*,
686 So. 2d 1092, 1097 (Miss. 1996) . . . . . . 12

*Campbell v. Wells Fargo Bank*,
781 F.2d 440, 442 (5th Cir.1986) . . . . . . 9

*City of Jackson v. Estate of Stewart ex rel. Womack*,
908 So. 2d 703, 711 ( Miss. 2005) . . . . . . 18

*Collins v. Morgan Stanley Dean Witter*,
224 F. 3d 496, 498 (5th Cir. 2000) . . . . . . 9

*Conley v. Gibson*,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . 9

*Dalton v. Cellular South, Inc.*,
20 So. 3d 1227 (Miss. 2009) . . . . . . 10, 16

*Dedeaux Utility Co., Inc. v. City of Gulfport*,
63 So.3d 514, 530-31 (Miss.2011) . . . . . . 23

*George B. Gilmore Co. v. Garrett*,
582 So. 2d 387 (Miss. 1991) . . . . . . 18

*Gray v. Edgewater Landing, Inc.*,

541 So.2d 1044 (Miss.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Government Employees Ins. Co. v. Brown,
446 So.2d 1002, 1006 (Miss.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gunn v. Principal Cas. Ins. Co.*,
605 So. 2d 741, (Miss. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hartford Acc. & Indem. Co. v. Bridges*,
350 So.2d 1379 (Miss.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Holliday v. Pizza Inn, Inc.*,
659 So.2d 860 (Miss. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jackson v. Daley*,
739 So.2d 1031 (Miss.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Insurance Co. of North America v. Deposit Guaranty Nat. Bank*,
258 So.2d 798 (Miss.1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
677 F.2d 1045 (5th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Key Life Ins. Co. of S.C. v. Tharp*,
253 Miss. 774, 179 So.2d (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lewis v. Equity Nat. Life Ins. Co.*,
637 So.2d 183 (Miss. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 20, 22

*Motors Ins. Corp. v Stanly*,
237 Miss. 681, 115 So.2d 678 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McFarland v. Utica Fire Ins.* Co.,
814 F. Supp. 518 SD Miss. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*National Fire Ins. Co. v. Slayden*,
227 Miss. 285, 85 So.2d 916 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pursue Energy Corp. v. Perkins*,
558 So.2d 349 (Miss.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Reserve Life Insurance v. McGee*,
444 So.2d 803 (Miss. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Scanlan v. Texas A&m University*,
343 F. 3d 533 (5th Cir. 2003) . . . . . . . . . . 9, 21

*State Farm Mut. Auto. Ins. Co. v. Scitzs*,
394 So.2d 1371 (Miss.1981) . . . . . . . . . . 16

*Stewart v. Gulf Guar. Life Ins Co.*,
846 So. 2d 192 (Miss. 2002) . . . . . . . . . . 20

*Trammell v. State*,
622 So.2d 1257 (Miss. 1993) . . . . . . . . . . 19

*Travelers Fire Ins. Co. v. Price*,
169 Miss. 531, 152 So. 889 (1934) . . . . . . . . . . 14

*Wilson v. Wilson*,
547 So.2d 803 (Miss. 1989) . . . . . . . . . . 11

**Statutes:**

29 U.S.C. § 1291 . . . . . . . . . . 1

Fed. R. Civ. P 12(b)(6) . . . . . . . . . . 8

Fed. R. Civ. P 8(a)(2) . . . . . . . . . . 9

Miss. Code Ann. § 1-3-65 (1972) . . . . . . . . . . 11

## V. JURISDICTIONAL STATEMENT

A. District Court's Jurisdiction

The disrict court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1332, grants original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. In the instant case, the Plaintiff is Gore, Kilpatric and Dambrino, PLLC, and all members are residents of the State of Mississippi and are a Mississippi Professional Limited Liability Company. The Defendant Spinnaker Insurance Company is an Illinois Company. The Defendant Cowbell Cyber, Inc., is a Delaware Corporation. The Defendant Cowbell Insurance Agency LLC, is a California Corporation. The amount in Controversy seeks actual damages in the amount of $153,425.00, exclusive of costs and interests.

B. Court of Appeal's Jurisdiction

This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291 because the judgment below was a final judgement of the United States District Court.

C. Timeliness Appeal. The trial courts order granting the motion to dismiss was rendered on March 31, 2026. The Final Judgment was entered on April 6, 2026. The notice of appeal was filed on April 29, 2026.

D. Final Judgment. The trial court held the April 6 final judgment dismissed this entire case, it is final and appealable. ROA.834-834 (Order Denying Motion to Certify). This appeal is from a final judgment that disposes of all parties' claims.

## VI. STATEMENT OF ISSUES

1. Did the trial court err when it granted the motion to dismiss in favor of all defendants?

2. Did the trial court err by not considering or addressing the Plaintiff-Appellant's Motion for Partial Summary Judgment.

## VII. STATEMENT OF THE CASE

The Plaintiff-Appellant Gore, Kilpatrick & Dambrino P.L.L.C. (hereinafter Gore, Plaintiff or Appellant) filed their first complaint on July 11, 2025 against Spinnaker Insurance Company ("Spinnaker"), Cowbell Cyber Inc. ("Cowbell I") and Cowbell Insurance Agency L.L.C. ("Cowbell II"). Collectively these Defendants may be referred to as Appellants or Defendants. ROA.8-25 Exhibit A to the Complaint was the Cyber Liability Insurance Policy. ROA.26-81 Exhibit B to the Complaint are examples of material mailed to Gore by Cowbell I. ROA.82-85 Exhibit C to Complaint is copy of a letter dated May 30, 2024 allegedly from Eddie A. Flowers, Jr. ROA.86 Exhibit D to Complaint is copy of a check allegedly issued by Citibank in the amount of $158,850.00. ROA.87 Exhibit E to Complaint is copy of an email allegedly from David Casteel dated June 7, 2024. ROA.88-89 Exhibit F to the Complaint is copy of notice showing that $158,850.00 was returned to Gore's bank account. ROA.90-91 Exhibit G to Complaint is Copy of Letter dated August 19, 2024 from Cowbell I denying Gore's claim under the Cyber Liability Policy. ROA.92-102 Exhibit H to Complaint is copy of letter dated September 20, 2024 to Mamta Birla from Robert J. Dambrino, partner of Gore. ROA.103-104 Exhibit I to Complaint is copy of letter dated October 15, 2024 from Gabriel E. Darwick to Robert J. Dambrino. ROA.105-107

After summons were issued to all Defendants-Appellees, a motion and memorandum to dismiss the complaint was filed by Appellees on October 15, 2025. ROA.238-254 By order of the trial court, the Plaintiff-Appellant filed a corrected amended complaint on October 22, 2025

with the same exhibits as the original complaint. ROA.400-494 The Amended Complaint alleged five causes of action: Breach of Contract, Bad Faith Denial of Claim, Gross Negligence, Post Claim Underwriting and Fraud. The exhibits attached to the Corrected Amended Complaint were identical to those attached the original Complaint, and are incorporated herein by reference.

On October 26, 2025, the Defendants-Appellees filed a motion to dismiss the amended complaint. R0A.495-543 On October 26, 2-25 the Appellees filed a memorandum in support of the motion to dismiss. ROA.544-560. Plaintiff-Appellant filed on September 19, 2025 their response and memorandum in opposition the motion to dismiss. ROA.567-607 On October 10, 2025, the Defendants-Appellees filed their reply and memorandum to the Plaintiff-Appellant's opposition to the motion to dismiss. ROA.612-623

On November 25, 2025, the Plaintiff-Appellant filed their motion for partial summary judgment with exhibits and memorandum in support of motion for partial summary judgment. ROA. 624-730 On December 30, 2025, the Appellees filed their response and memorandum opposing the motion for partial summary judgment. ROA.735-748 On January 6, 2026, the Plaintiff-Appellant filed their reply to the Defendants-Appellants' response to partial summary judgment. ROA.749-758 On March 31, 2026, the trial court granted the Defendants-Appellees' motion to dismiss. ROA.785-799 The final judgment was entered on April 6, 2026.ROA. 801 The trial court neither addressed nor ruled on the motion for partial judgment. On April 29, 2026, the Plaintiff-Appellant filed their notice of appeal of the final judgment to the Fifth Circuit Court of Appeals. ROA.826-832

The following facts are relevant to the issues submitted to this Court for review. Gore was required by a client to purchase insurance against cyber crime. In conducting a search for an

appropriate Cyber Crime Insurance Policy, Gore was approached by Defendant Cyber I. A copy of the advertising material Cyber I sent to Gore was attached to the Plaintiff's Amended Complaint as Exhibit B. ROA.474-477 The advertising contains such statements as "Get peace of mind with a **Cowbell** cyber insurance policy. ROA.474 A pioneer in cyber insurance, **Cowbell** innovates to make cyber insurance easy and brings clarity to cyber coverage for organizations like ours. ROA.474 The Unique **Cowbell** approach. Gain complete insight into your organization's risk exposure using **Cowbell** Cyber's early warning system." (Emphasis ours). ROA.474 All of the pages refer to Cowbell®. Cowbell ® is registered with the United States Patent and Trademark Office by Defendant Cowbell I. See Exhibit "C" to Gore's Motion for Partial Summary Judgment. ROA.640-641

The heading on the second page of the material submitted to Gore refers to Cowbell Cyber Insurance Quote-Prime 100. ROA.475 The policy limits were $1,000,000.00 with a $1000.00 deductible.[1] ROA.475 The quoted premium price was $1,817.00 which was accepted by Gore. The fourth page of the material listed all of the Cowbell Cyber Coverages-Prime-100, including Social Engineering coverage. ROA.477 This was the policy of insurance from Cowbell I that Gore expected. Instead, the policy was issued by Spinnaker. ROA.418-475 It was not a policy issued by Cowbell I as implied by the advertising material, but by Spinnaker. Gore had never contacted nor heard of Spinnaker. However, in all fairness at the bottom of page 2 to page 4 of the material in very small print reads "Policies underwritten by Cowbell Insurance Agency are written by Spinnaker Insurance Company . . . " ROA.475-477 Cowbell Insurance Agency is

[1] The limits on the Social Engineering Endorsement of the Spinnaker Policy was not $1,000,000.00 but rather was $250,000.00. ROA.450

Cowbell II, but is not Cowbell I.

On or about May 23, 2024 an individual representing himself to be David Casteel (hereinafter " Imposter Casteel") sent an email to Jay Gore for the purpose of securing legal services to collect a debt allegedly owed to Imposter Casteel's company, Brooks Machinery, Inc., by a Greenwood, Mississippi, based company, Mid-Delta Equipment LLC. The debt claimed was $158,850.00. See affidavit of Jay Gore III, attached to the Plaintiff's Motion for Partial Summary Judgment as Exhibit "D." ROA.642-644 The imposter Casteel executed an engagement letter required by Gore. ROA.674-675 This made the imposter Casteel a client for which services were provided. Various emails were sent to Gore by the imposter Casteel and are attached to Jay Gore's affidavit as Collective Exhibit "G." ROA.667-692 The Imposter who identified himself as Casteel was not the real David Casteel, and the imposter Casteel did not own Brooks Machinery, Inc. A detailed search by the undersigned counsel found the real David Casteel who provided the following affidavit.

> I was the owner and general manager of Brooks Machinery, Inc. located at 2408 Tech Center Parkway, Suite #100, Lawrenceville, Ga 30043, from 1992 until 2009. Brooks Machinery Inc. made woodworking machinery. The company stopped working sometime in 2009. Brooks Machinery Inc. was administratively dissolved by the Georgia Secretary of State on September 9, 2010. Shortly afterwards, Brooks Machinery Inc. filed for bankruptcy and has done no work since then. I have no knowledge of Mid Delta Equipment located in Greenwood, Mississippi. I never sold them any equipment for $355,890.00 nor did I receiver a partial payment from Mid Delta Equipment in the amount of $200,000.00, leaving a balance due of $155,850.00. That would be impossible as Brooks Machinery Inc. had long stopped doing any business at that time. I had no suppliers in 2024. Any such debt owed to Brooks Machinery would have belonged to the bankruptcy estate.
>
> I never contacted the firm of Gore Kilpatrick & Dambrino. I have never heard of them. I also do not know an attorney named Paul Moore or Paul Moore, Jr. of Calhoun City, Mississippi. My Email Address iscasteeldr@gmail.com. I have never used the Email Address of davidcasteel04@gmail.com. The phone number of 770-200-4432 reportedly used by the person claiming to be David Casteel is not mine and

> has never been mine. Until Mr. Chapman contacted me by telephone on June 27, 2025, no one else has ever contacted me about this situation. The David Casteel who apparently contacted this law firm would be an imposter pretending to be me.

See copy of Affidavit of David Casteel. ROA.693-694 Brooks Machinery, Inc. was administratively dissolved on September 9, 2010. See copy of report from the Secretary of State of Georgia. ROA.695 Therefore Brooks Machinery, Inc. was an entity that was also an imposter. There was no debt owed by Mid-Delta Equipment LLC to Brooks Machinery; this was a complete fabrication by the Imposter Casteel.

On June 3, 2024, the Imposter Casteel informed Gore that Mid-Delta had allegedly agreed to pay the debt and, in an elaborate scheme to defraud Gore by a cyber crime, described numerous details of why the debt was late and when the payment would be received by the Imposter Casteel. The Imposter Casteel referred to an alleged conversation the Imposter Casteel had with Allen Flowers of Mid-Delta who was the manager of the Mid-Delta Equipment, LLC, in Greenwood, Mississippi. ROA.679-680

On June 5, 2024, Jay Gore III received a letter dated May 30, 2024, allegedly from Mid-Delta Equipment, allegedly signed by Eddie A. Flowers (Allen Flowers) enclosing an Official Check drawn on Citibank in the amount of $158,850.00 in payment of the so-called debt to Brooks Machinery, Inc. The alleged Eddie A. Flowers was also an imposter as the real Eddie A. Flowers had no contact with Imposter Casteel or Imposter Brooks Machinery, Inc. See Affidavit of Alan Flowers. ROA.698 This correspondence was, in fact, provided by the Imposter Casteel; the official check was likewise a fabrication and provided by the Imposter Casteel, posing as imposter Eddie A. Flowers of Mid-Delta. A true copy of said May 30, 2024, letter is attached as Exhibit "G" to the Motion for Partial Summary Judgment. ROA.478 A true copy of the enclosed, false

Official Check is attached to the Amended Complaint. ROA.479

Allen Flowers of Mid-Delta Equipment Company L.L.C. has stated under oath as follows:

> I am the president of Mid Delta Equipment LLC, whose main address is 3104 Highway 49 South, Greenwood, MS 38930. I did not send any letter dated May 30, 2024 to Gore, Kilpatrick & Dambrino, PLLC. I have never heard of Brooks Machinery, Inc. Mid Delta Equipment LLC has never ordered any equipment from them. Mid Delta Equipment LLC has no bank account with Citibank, nor did Mid Delta Equipment LLC send any Official Check in the amount of $158,850.00 to Gore, Kilpatrick & Dambrino, PLLC. Whoever sent the letter and the Official Check was an imposter impersonating me.

See Affidavit of Flowers. ROA.698

The Imposter Casteel by telephone advised Gore to deduct its attorneys' fee from the amount deposited, and to wire the remaining balance to him in his false capacity as a representative of Brooks Machinery, Inc. Upon receipt of the Official check, the Insured deposited same into its IOLTA/Escrow Account and, pursuant to its verification procedures, awaited confirmation from its depository bank, Regions Bank, NA, that the check had cleared. The Imposter Casteel by telephone advised Gore to deduct its attorneys' fee from the amount deposited, and to wire the remaining balance to him in his false capacity as a representative of Brooks Machinery, Inc.

On June 7, 2024, Regions Bank, NA, advised that the check had, in fact cleared. On June 7, 2024, pursuant to wiring instructions provided by the Imposter, and pursuant to its own verification procedures and safeguards, Gore wired the sum of $158,425.00 to the account specified by the Imposter Casteel. ROA.692 On June 10, 2024, the Official Check previously attached hereto as Exhibit D was returned unpaid. ROA.482-483 A true copy of said returned Official Check was marked as Exhibit F to the Amended Complaint and incorporated herein by reference for all purposes. ROA.482

On June 17, 2024, the Gore filed a claim under the subject insurance policy with Cowbell I, as directed . The claim was made pursuant to the Social Engineering Coverage Endorsement on the policy. On August 19, 2024, Mamta Birla, who is the Director of Claims of the Claims Department for Cowbell I, advised the Insured that the claim was being denied for lack of coverage. A copy of the letter was attached to the Amended Complaint as Exhibit "G." ROA.484-494 The denial of coverage is the subject of the Amended Complaint against the Appellees, the subject of the Motion to Dismiss and the subject of this appeal.

## VIII. SUMMARY OF THE ARGUMENT

The trial court was in error in granting the motion to dismiss. The trial court failed to liberally construe the Complaint in favor of the plaintiff, and failed to apply the rule on such motions that all facts pleaded in the complaint must be taken as true. The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The trial court erred in doing so in granting the motion to dismiss. The trial court was in error in holding that the insurance contract was unambiguous. Under Mississippi law, if a contract is subject to two interpretations, the contract is ambiguous. As will be addressed subsequently, the Appellees themselves had not two, but three interpretations of the contract. The Appellees owed a duty to conduct a proper investigation of the claim. They failed to do so. The motion to dismiss was erroneously granted by the trial court.

## IX. ARGUMENT

The trial court was in error in granting the Appellees' motion to dismiss and in failing to address or consider Gore's motion for partial summary judgment. A motion to dismiss under rule

12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S., 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000). The district court can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Scanlan v. Texas A&m University*, 343 F. 3d 533, 536, (5th Cir. 2003).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80. Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555-558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**A: The Trial Court Was In Error In Finding That The Spinnaker Policy Was Unambiguous, Did Not Qualify As A Social Engineering Incident And Finding That The Breach Of Contract Claim Failed.**

Gore's claim for coverage under the Spinnaker Policy was made pursuant to the Social Engineering Incident Endorsement. The subject Cyber Crime Insurance Policy defines "Social Engineering Incident" as follows:

> c. **Social Engineering Incident** means the intentional misleading of an **Insured** to transfer **Money** to a person, place or account beyond the **Named Insured's** control resulting directly from the Named Insured's employee's good faith reliance upon an instruction transmitted via email, purporting to be from:
>
> i. A natural person or entity who exchanges, or is under contract to exchange, goods or services with the **Named Insured** for a fee (other than a financial institution, asset manager, broker-dealer, armored motor vehicle "named insured" or any similar entity; or
>
> ii. an employee of the **Named Insured**;
>
> but which contained a fraudulent and material misrepresentation and was sent by an imposter. (emphasis as in original)

This is the language in the policy. ROA.450 All versions of the facts support coverage. Strained attempts of interpretation should not alter clear coverage for Gore.

How is this provision interpreted? The Appellees have interpreted it three different ways! This clearly establishes the provision ambiguous under Mississippi law. Because this is a diversity case, Mississippi law must be applied. *84 Lumber Co. v Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019). Under Mississippi law, if a contract is subject to two interpretations, the contract is ambiguous. *Dalton v. Cellular South, Inc.*, 20 So. 3d 1227, 1223 (Miss. 2009).

**First Interpretation Of the Social Engineering Endorsement For Denying the Claim**

Mamta Birla, the Director of Claims for Cyber I, on her August 19, 2024 letter states the

claim is denied for the following reason: [2]

> Based on the details provided, it is Spinnaker's position that there was no "fraudulent and material misrepresentation sent by an imposter" to intentionally mislead Insured as Mr. Casteel always had the intent to defraud the firm by obtaining the firm's funds through a fake Official Check. There was no "imposter" that intercepted the communications between Insured and Mr. Casteel that caused Insured to be misled by a fraudulent and material misrepresentation to transfer Mr. Casteel's funds to the imposter instead. Here, we understand that the Insured's investigation revealed that the entire engagement with Mr. Casteel was a scam which resulted in the Insured being defrauded of $158,425. Mr. Casteel created a fake scheme through which to misappropriate the Insured's funds. Thus, based on the details provided, there is no indication that the loss of funds is the result of a Social Engineering Incident, as defined under the Policy."

According to Mamta Birla's interpretation of the Social Engineering Provision and her investigation of the claim, there was no imposter! Indeed the term "imposter" is not defined in the Spinnaker Policy. Our Supreme Court has repeatedly held that words are given their common meaning. *Gunn v. Principal Cas. Ins. Co.*, 605 So. 2d 741, 743 (Miss. 1992)(as a general proposition, we seek common and ordinary meanings for words upon which rights turn.) See Also *Wilson v. Wilson*, 547 So.2d 803, 805 (Miss. 1989); *National Fire Ins. Co. v. Slayden*, 227 Miss. 285, 289, 85 So.2d 916, 917 (1956). This concept is even contained in Miss. Code Ann. § 1-3-65 (1972). Merriam-Webster defines imposter as "one that assumes false identity or title for the purpose of deception." How better to describe the imposter David Casteel!

Her investigation concluded that Gore was dealing with the real David Casteel and not an imposter. An adjuster has a duty to obtain all relevant information and must make a realistic

---

[2] This is Reason 1 for denial of the claim for Social Engineering. Both Spinnaker Counsel Gabriel E. Darwick and the Motion to Dismiss have a different interpretation of Social Engineering. This is Reason 2. Further, in responding to Gore's motion for partial judgment, a third interpretation of the provision was put forth which will be subsequently addressed. This is Reason 3.

evaluation of a claim. *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1097 (Miss. 1996); *Lewis v. Equity Nat. Life Ins. Co.*, 637 So.2d 183 187 (Miss. 1994)(an insurance company had a duty to the insured to make a reasonably prompt investigation of all relevant facts) ; *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d, 254, 276 (Miss. 1985);

> [B]efore denying a claim, the insurer, at a minimum, must determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all medical records relevant to the claim.

The allegations that Manta Birla failed to conduct a proper investigation, thereby breaching a duty imposed under Mississippi law, can be found from their Amended Complaint on Paragraphs 39 (a). Had the Defendants conducted a proper investigation, the Defendants would have discovered that David Casteel was an imposter: 39 (b) Had the Defendants conducted a proper investigation, the Defendants would have discovered that Brooks Machinery, Inc. was an imposter; 39 (c) Had the Defendants conducted a proper investigation, the Defendants would have discovered that Eddie A. Foster, Jr. was an imposter. ROA.413-414

If Birla, Cowbell I or Spinnaker had conducted a reasonable investigation they would have determined that the imposter Casteel was indeed an imposter and not the real David Casteel. This alone would have negated the denial of coverage. Because the David Casteel that Gore dealt with was not the real David Casteel, but an imposter, coverage exists under the policy. See Affidavit of David Casteel. ROA.693-694 Indeed, there were two other imposters which neither Birla, Cowbell I nor Spinnaker's alleged investigation failed to uncover, making a total of three. Foster was an imposter. See Foster affidavit. ROA.698 Brooks Machinery Inc. was an imposter as it had been administratively dissolved in 2010 and had taken bankruptcy. See Affidavit of David Casteel and Georgia Secretary of State Report. ROA.693-695 Nowhere in

her denial letter of August 19, 2024 does Manta Birla even mention an investigation. She only considered the information that Gore sent to Cowbell I as required to make a claim.

**Second Interpretation Of the Social Engineering Endorsement For Denying the Claim**

Of the three ambiguous interpretations of the provision, this is the ambiguous interpretation that the trial court erroneously found to apply. Defendant Spinnaker's coverage Counsel Gabriel E. Darwick and the Defendants' Motion to Dismiss itself, comes to an entirely different interpretation of the policy provision. Darwick's letter of denial dated October 15, 2024, was attached to the Amended Complaint as Exhibit "I" and incorporated herein for all purposes. ROA.712-714 Darwick's interpretation of the provision, which the trial court adopted in granting the Motion to Dismiss, is as follows spells out five requirements in order to have coverage under the Social Engineering Coverage Endorsement:

(1) The insured must have been intentionally misled;
(2) by an instruction transmitted via e-mail;
(3) purporting to be from a natural person or entity who exchanges, or is under contract to exchange, goods or services, with the insured for a fee;
(4) which contained a fraudulent and material misrepresentation; and
(5) was sent by an imposter

These same requirements are found on page 6-7 of Appellees' Memorandum iupport of Motion to Dismiss. ROA.549-550 The Appellee's motion alleges that requirements (1), (2) and (4) are met, but not (3) and (5). Both Darwick and the Motion to Dismiss result in a different interpretation of the Social Engineering Provision from Birla and adds additional language to the policy that the policy does not contain. Both Darwick and the Motion to Dismiss incorrectly require that the Social Engineering Provision include at least three parties: the insured (Gore), the imposter Casteel, and the natural/person entity that the insured has a contractual relation with (the real David Casteel). This language or requirements are not found anywhere in the Spinnaker

Policy. This is contrary to Mississippi law and the Policy itself.

Both the Darwick letter and the Appellees' Motion to Dismiss are adding language not contained in the policy along with Darwick's interpretation. "[A]n insurer cannot materially modify an existing and completed contract of insurance without the consent of the insured; that is, a valid and binding contract of insurance cannot be changed or altered in any material respect, by the insurer or its agent, without the knowledge or consent of the insured." *McFarland v. Utica Fire Ins.* Co., 814 F. Supp. 518, 521 SD Miss. 1992). *Motors Ins. Corp. v Stanly*, 237 Miss. 681, 115 So.2d 678, 683 (1934) (a soliciting and collecting agent for an insurer is without power to modify an insurance contract ...); *Travelers Fire Ins. Co. v. Price*, 169 Miss. 531, 152 So. 889, 891 (1934)(soliciting and collecting agent of insurance company is without power to modify contract of insurance). Section VI, 2 of the Policy states that can the policy cannot be amended or waived only by endorsement issued by Us and made a part of the policy. ROA.432

Darwick continues in his denial letter and the Motion to Dismiss adopts, "Critically, the Insured did not enter into any contract for services with the natural person Casteel or the entity Brooks Machinery (assuming they exist). Rather, the insured entered into a contract with the fraudster. Thus, when the fraudster requested that the Insured wire money to his bank account, he was not 'purporting to be from 'the natural person Casteel or the entity Brooks Machinery with whom the insured entered into a contract for services, because no such agreement existed.'

Darwick and the Defendant' Motion to Dismiss on page 7 adds an additional requirement that Gore must have entered into a contract with the real David Casteel or with the entity Brooks Machinery. ROA.550 Nowhere in the policy is does it state that an Insured must have entered into a contact with the actual counterparty person or entity that the imposter is impersonating.

According to Darwick, "The only **reasonable interpretation** of this language is that the fraudster cannot be both the imposter and the natural person or entity that entered into a contract with the insured. (Emphasis ours)." ROA.581 The test for an unambiguous contract under Mississippi law is the court must give effect to the plain meaning of **clear and unambiguous** language. *Jackson v. Daley*, 739 So.2d 1031, 1041 (Miss.1999). Our emphasis. Further, the interpretation that Gore must have entered into a contract with the real David Casteel of Brooks Machinery is found nowhere in the provision.

Once a contract is found to be ambiguous, resolution of any uncertainties will be against the drafter of the contract. See *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 352 (Miss.1990). Coverage exists under the policy.

**Third Interpretation Of the Social Engineering Endorsement For Denying the Claim**

In Appellees' response to Gore's motion for partial summary judgment, a third interpretation to the policy was put forth. In their response to the motion for summary judgment, the Appellees conceded that there was a fraudster, contrary to Birla's conclusions. They now come up with a third interpretation of the policy. According to the Appellees' memorandum opposing the motion for partial summary judgment, on page 2 of their memorandum, the Appellees' state, "the question dispositive to Defendants' Motion to Dismiss and Gore's Motion for Partial Summary Judgment is whether an email sent from the person (fraudster) that contracted with Gore into wiring money can be both 'purport to be from' that person and be sent by an 'imposter.'" Appellees say it cannot! ROA.738 Nowhere is this language contained in the policy. Appellees are once more amending the policy contrary to both Mississippi law and the language contained in the policy. According to the Appellees this is a "carefully crafted,

narrow insuring agreement." ROA.742 This insurance tactic is not allowed under Mississippi law. *Blackledge v. Omega Ins. Co.*, 740 So. 2d 295, 298 (Miss. 1999)(This is so because holders of insurance policies are not expected to be "word-smiths, schooled in the craft of lexicology," and because the law disfavors "subtle definitions of common words which but promise to confuse even the educated and frustrate the unlearned.")

What the Appellees have created is an ambiguous policy subject to different interpretations to avoid coverage. If a policy is subject to different interpretations, the policy is ambiguous. *Dalton v. Cellular South, Inc.*, 20 So. 3d at 1223. An ambiguity in an insurance policy exists when the policy can be interpreted to have two or more reasonable meanings. *Insurance Co. of North America v. Deposit Guaranty Nat. Bank*, 258 So.2d 798, 800 (Miss.1972). When the language of a policy is subject to more than one reasonable interpretation, this Court will apply a construction permitting recovery. *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1372 (Miss.1981). If there is an ambiguity within a policy of insurance, then the intention of the parties to the insurance contract should be determined based upon what a reasonable person placed in the insured's position would have understood the terms to mean. *Key Life Ins. Co. of S.C. v. Tharp*, 253 Miss. 774, 781, 179 So.2d 555, 558 (1965). Where a clause of an insurance policy subject to dispute involves exceptions or limitations on the insurer's liability under the policy, this Court construes the policy even more stringently. *Government Employees Ins. Co. v. Brown*, 446 So.2d 1002, 1006 (Miss.1984) (adopting the theory that, without clear and unambiguous language of limitation by insurer, insurer cannot limit recovery for benefits for which a insured paid a premium). At best, the language put forth by the Appellees is difficult to understand and ambiguous. Our Court held in *Hartford Acc. & Indem. Co. v. Bridges*, 350 So.2d

1379, 1381-82 (Miss.1977) "that because language seeking to limit liability of insurer was ambiguous and difficult to understand, aggregating of coverages was warranted."

But to answer the Appellees' question, can an email sent from the person (fraudster) that contracted with Gore into wiring money can purport to be both from that person and be sent by an 'imposter. the answer is yes. **Part One**. Can an email sent from the person (fraudster) that contracted with Gore into wiring money purport to be both from that person and be sent by an imposter? Ths answer is yes. It was sent by the fraudster Casteel and from the fraudster that Gore had entered into a contract with. See letter of engagement. ROA.674-675 Gore followed their established verification procedures by sending the alleged Casteel a letter of engagement. The Imposter Casteel signed and returned the fee agreement on June 3, 2024. This contract makes the imposter a client for whom value was to be exchanged. **Part Two**. Can it be sent by the imposter Casteel. Yes. Who else could have sent it? Appellees' twisted interpretation fails as a matter of law. There is coverage under the Spinnaker policy. The trial court was in error holding to the contrary.

**B: The Trial Court Was In Error In Dismissing Gore's Breach Of Contract Cause Of Action By Holding There Was No Privity Of Contract Between Gore and Cowbell I Nor Cowbell II.**

In their Motion to Dismiss, the Appellees alleged that Gore's claims against Cowbell I and Cowbell II must be denied because there is no privity of contract. However, as Jay Gore's affidavit states:

> Our firm was required by a client to purchase insurance against cyber crime. In conducting a search for an appropriate Cyber Crime Insurance Policy, our firm was approached by Defendant Cyber I. A copy of the advertising material Cyber I sent to our firm is attached hereto as Exhibit "A." Our firm accepted the Cyber Crime Insurance Policy proposed by Cyber I. The policy limits were $1,000,000.00 with a $1000.00 deductible. The quoted premium price of

> $1,817.00 was accepted by our firm. The policy was issued by Defendant Spinnaker. The policy was underwritten by Cowbell Insurance Agency which is Defendant Cowbell II. **Our firm entered into a contract with Cowbell I to provide Cyber Crime Insurance. Our firm is billed yearly by Cowbell I. Our firm pays its yearly premiums directly to Cowbell I**. (Emphasis our).

ROA. 642-644

Further, no privity of contract is needed when a Defendant commits an independent tort. Under Mississippi law, a plaintiff may make a claim under both breach of contract and negligence. In *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703, 711 ( Miss. 2005), our Mississippi Supreme Court held:

> The Estate's breach of contract action and its tort action both arise from the same set of operative facts, and they allege the same damage. In other words, plaintiff claims when Mrs. Spiller left Mrs. Stewart unattended, the City breached its contract with CMPDD and it was also negligent. Plaintiff further claims it was permissible for her to bring suit under both causes of action. **We agree**. (Emphasis ours)

Likewise in *George B. Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991), the Mississippi Supreme Court held: "Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that **a negligent performance constitutes a tort as well as a breach of contract**.) (Emphasis ours). *Garrett* further held "The question as to when and to what extent a recovery for negligence may be based on the breach of a contract obligation has been declared to be one of the moot questions of law." Id.

Under Mississippi law, breach of contract and tort may be joined in one complaint. *Trammell v. State*, 622 So.2d 1257, 1261 (Miss. 1993)(in sum, actions in contract and tort may now be joined in the same complaint). That was what Gore had done in the case sub judice.

Even though privity exists, privity is not a necessary element for the tort of negligence. The elements of a negligence claim are duty, breach of duty, proximate cause, and damages. *Holliday v. Pizza Inn, Inc*., 659 So.2d 860, 864 (Miss. 1995) (quoting *Skelton v. Twin County Rural Elec. Ass'n,* 611 So.2d 931, 936 (Miss. 1992)). As previously addressed, Cowbell I was negligent by failing to conduct a proper investigation. *Lewis v. Equity Nat. Life Ins. Co.*, 637 So.2d at 187 (an insurance company had a duty to the insured to make a reasonably prompt investigation of all relevant facts) ; *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d, at 276;

> [B]efore denying a claim, the insurer, at a minimum, must determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all medical records relevant to the claim.

*Lewis*, 637 So.2d at 187.

Cowbell I breached that duty and Gore suffered a loss of $158,425.00. The trial court was in error in holding that there was no privity of contract between Gore and Cowbell I. This was a motion to dismiss and all the well plead fact in Gore's Complaint must be taken as true. The trial court was in error in holding otherwise.

**C: the Trial Court Was in Error in Dismissing Gore's Causes of Action for Bad Faith, Gross Negligence, and Post-claims Underwriting Fail By Holding That The Underlying Breach of Contract Cause of Action Fails And Gore Has Not Sufficiently Pled Any Allegations That Would Support Such Claims And As To Cowbell I and Cowbell II, Because They Are Not in Privity of Contract with Gore, Gore's Bad Faith Cause of Action Against Them Must Fail**

Defendants engaged in post-claim underwriting. Post-claim underwriting occurs when an insured pays premiums and operates under the assumption he is insured against a specified risk, only to learn after he submits a claim that he is not insured. *Stewart v. Gulf Guar. Life Ins Co.*, 846 So. 2d 192, 204 (Miss. 2002); *Lewis v. Equity Nat. Life Ins. Co.*, 637 So. 2d at 188.

Birla denied the claim because she concluded, without any investigation, that Gore was

contacted by the real David Casteel and there was no imposter. Had investigation been taken by Birla, she would have had to approve the claim as her basis for denial was incorrect. Which, of course, she didn't. Nowhere in her denial letter of August 19, 2024 does Manta Birla even mention an investigation. She only considered the information that Gore sent to Cowbell I as required to make a claim. She was looking for a reason to deny the claim and found one that fit her mistaken view of the facts. An insurer cannot look for a reason to deny the claim and play the odds it may win or lose. See Eg. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1193 (Miss. 1990)(The insurer can continue to "play the odds" through usage of risky practices which motivates agents to make misrepresentations; they can then deny a claim; flippantly "absolve" itself of any responsibility for such misrepresentations; and it can lose).

As previously addressed in part A and B above, privity of contract exists between Gore and Cowbell I and the underlying breach of contract does not fail for lack of privity. The arguments are incorporated herein by reference. The trial court was in error in holding otherwise.

**D: The Trial Court Was In Error In Dismissing Gore's Fraud Cause of Action By Holding That Gore Has Not Pled its Fraud Cause of Action with Particularity**

It is difficult to imagine how Gore did not plead the cause of action for fraud in the Amended Complaint. Paragraph 43 of the Amended Complaint alleges the following with respect to fraud.

> Plaintiff incorporates paragraphs 1-42 of this complaint as if fully stated herein in support of this fraud claim together with all exhibits attached to this complaint. Defendant Cowbell committed fraud by falsely claiming to the Plaintiffs that they were getting "peace of mind with a Cowbell cyber insurance policy." Defendant Cowbell committed fraud to Plaintiffs by further falsely claiming that they were "a pioneer in cyber insurance, Cowbell innovates to make cyber insurance easy and brings clarity to cyber coverage for organizations like yours." Cowbell claims that Cowbell is the leading provider of cyber insurance for small and medium-sized enterprises (SMEs) and the pioneer of Adaptive Cyber Insurance. This was not what Cyber provided to the plaintiffs. Indeed, Cyber engaged in the fraudulent

> behavior of "bait and switch." See Exhibit "A" attached to this complaint. All Defendants further committed fraud by failing to properly investigate the claim of the Plaintiff, along with asserting non-sensical interpretations of what an imposter consists of is beyond the language of the policy. Not only did the Defendants act in a fraudulent manner the Defendants acted in reckless disregard, all of which resulted in the denial of the Plaintiff's claim. Defendants Cowbell and Cowbell II and Spinnaker are jointly liable for fraud and for actual and punitive damages.

ROA.415-416

Under the standard for a motion to dismiss, these allegations must be taken as true. If these statements are taken as true, Gore has plead fraud with particularity in the Amended Complaint

While under FRCP 9 (b), fraud must be plead with particularity, Gore has done so. The fraud was the denial of Gore's claim by Mamta Birla of Cowbell I by not conducting any investigation, much less a reasonable investigation. She conducted no investigation as required under Mississippi law previously addressed. Nowhere in her denial letter of August 19, 2024 does Manta Birla even mention an investigation. She only considered the information that Gore sent to Cowbell I as required to make a claim and concluded, erroneously and fraudulently, that Gore was dealing with the Real David Casteel and not an imposter.

The district court can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Scanlan v. Texas A&m University*, 343 F. 3d at536. The trial court was in error in granting the motion to dismiss and by holding that Gore failed to plead fraud with particularity.

**E: The Trial Court Was In Error In Dismissing Gore's request for bad faith, gross negligence and punitive damages because the underlying causes of action on which it is predicated fail to state a claim.**

The trial court was in error in dismissing Gore's request for punitive damages by holding

that the social engineering endorsement in the insurance policy was unambiguous and that there was no coverage under the social engineering endorsement. This issue was previously addressed in Part A and is incorporated herein by reference.

The three-part test for gross negligence was set forth in *Reserve Life Insurance v. McGee*, 444 So.2d 803, 809-810 (Miss. 1983), for determining when a punitive damage instruction should be presented to the jury in a bad faith case. The *McGee* Court explained:

> Initially, the trial court should examine whether as a matter of law the insurer has a legitimate or arguable reason to deny the claim. Should the court find that there is a legitimate or arguable reason for the denial, a punitive damage instruction should not be given; if however, reasonable minds could differ as to whether there is a legitimate or arguable reason, the court must next consider whether there is evidence of gross negligence or intentional misconduct in the denial of the claim. If there is sufficient evidence to indicate that the insurer acted intentionally or was grossly negligent, a punitive damage instruction should be granted.

The failure to properly investigate a claim may lead to punitive damages. *Lewis v. Equity Nat. Life Ins. Co.*, 637 So.2d at 187(an insurance company had a duty to the insured to make a reasonably prompt investigation of all relevant facts) ;

*Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d at 276;

> [B]efore denying a claim, the insurer, at a minimum, must determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all medical records relevant to the claim.

*Lewis*, 637 So.2d at 187.

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544; 127 S.Ct. 1955, (2007), the standard for denying a motion to dismiss "simply calls for enough factf to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or elements. Id. at 1965. When the appropriate standard for denying a motion to dismiss is applied, the Appellee's motion to dismiss

should have been denied. The trial court was in error in holding otherwise.

Cowbell I and Cowbell II may attempt to argue that *Thompson v. Nationwide Mut. Ins. Co.*, 971 F. Supp. 242, 243 (ND Miss. 1997) holds that a claim for breach of an insurance contract lies against the company, not the agent. *Gray v. Edgewater Landing, Inc.*, 541 So.2d 1044, 1047 (Miss.1989) holds as agents for a disclosed principal they incur no individual liability, absent fraud or other equivalent conduct. Gore has alleged in the Amended Complaint that Cowbell I and Cowbell II have committed fraud and gross negligence. Further Cowbell I is neither the agent for Spinnaker nor is it a third-party administrator. An examination of the material Cowbell I sent to Gore does not mention that Cowbell I is the agent for Spinnaker nor the third party administrator. ROA.474-477 Page 3 of the materials discuss Cowbell Cyber Insurance Quote-Prime 100 with aggregate limits of $1,000,000.00 and a deductible of $1,000.00. ROA.475 The page further states "Thank you for trusting Cowbell for you cyber coverage." ROA.475 The Social Engineering Endorsement is referred to as Cowbell Cyber Coverages-Prime 100. ROA.477 In Mamta Birla's letter she identifies Cowbell I, for the first time, as Spinnaker's Third Party Administrator. ROA. 484 This is mere *ipse dixit*. Such ipse dixit statement are not admissible. See Eg. *Dedeaux Utility Co., Inc. v. City of Gulfport*, 63 So.3d 514, 530-31 (Miss.2011). The arguments are not persuasive.

## X. CONCLUSION AND PRAYER FOR RELIEF

The trial court was in error in granting the motion to dismiss and in neither addressing nor considering Gore's motion for partial summary judgment. The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief.". The trial court erred in holding otherwise. The trial court was in error in holding that the insurance contract Social Engineering Endorsement was unambiguous. This included the interpretation of the Social Engineering Endorsement as erroneously interpreted by the trial court. The motion to dismiss was erroneously granted by the trial court. Gore would respectfully request that this Honorable Court reverse the trial court's order granting the motion to dismiss and remand for the trial court to proceed with discovery to prove the remaining allegations in the Amended Complaint.

Respectfully Submitted,

**CHAPMAN LEWIS & SWAN PLLC**

Respectfully Submitted,

By: s/ Dana J. Swan
Dana J. Swan MSB 8088
Chapman, Lewis & Swan
P. O. Box 428
Clarksdale, MS 38614-0428
(662) 627-4105)
Attorney for Plaintiff-Appellant
Gore, Kilpatrick & Dambrino, LLC

July 20th, 2026.

## XI. CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Brief of Appellant has been served upon counsel for all parties in this proceeding as identified below through the court's electronic filing system.

Gabriel E. Darwick PHV
White and Williams LLP
163 Madison Avenue
Morristown, NJ 07960
(201) 368-7228
Attorney for Defendant-Appellee Spinnaker Insurance Company
Attorney for Defendant-Appellee Cowbell Cyber, Inc.
Attorney for Defendant-Appellee Cowbell Insurance Agency LLC

Nicholas D. Garrard
Wilkins Patterson
4735 Old Canton Rd.
Ste 108
Jackson, MS 39211
(601) 366-4343
Attorney for Defendant-Appellee Spinnaker Insurance Company
Attorney for Defendant-Appellee Cowbell Cyber, Inc.
Attorney for Defendant-Appellee Cowbell Insurance Agency LLC

Robert R. Stephenson
Wilkins Patterson
4735 Old Canton Rd.
Ste 108
Jackson, MS 39211
(601) 366-4343
Attorney for Defendant-Appellee Spinnaker Insurance Company
Attorney for Defendant-Appellee Cowbell Cyber, Inc.
Attorney for Defendant-Appellee Cowbell Insurance Agency LLC

Clarksdale, Mississippi, this the 20th of July 2026.
s/ Dana J. Swan
DANA J. SWAN MSB 8088

## XII. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations, Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitations of Fed. R. App. P 32(a)(7)(B) because:

This brief contains 8,116 words, excluding the parts of the brief exempted by Fed. R. App.P 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. App. P. 32(a)(6) because:

This brief has been prepared in a proportional spaced typeface using Corel WordPerfect X4 in Times New Roman font.

3. This document complies with the AI usage reporting requirement of the 5th Cir. R. 32.3 because:

No generative artificial intelligence program was used in the drafting of this document.

By: s/ Dana J. Swan
Dana J. Swan MSB 8088
Chapman, Lewis & Swan
P. O. Box 428
Clarksdale, MS 38614-0428
(662) 627-4105)
Attorney for Plaintiff-Appellant
Gore, Kilpatrick & Dambrino, LLC

Dated: July 20th , 2026.